Edwin **LOPEZ MULERO**, Plaintiff,

v.

Hon. Sonia **VELEZ COLON**,
et als., Defendants.

**Civil No. 05–2346 (DRD).**

United States District Court,
D. Puerto Rico.

March 30, 2007.

Bamily Lopez–Ortiz, Lopez Toro, Law and Notary Offices, San Juan, PR, for Plaintiff.

Jose Enrico Valenzuela–Alvarado, Department of Justice Office of the Solicitor General, Valerie Maldonado–Rivera, Department of Justice, San Juan, PR, Vivian Gonzalez–Mendez, Harold A. Frye-Maldonado, P.R. Dept. of Justice, Fed. Lit., San Juan, PR, for Defendants.

### *ORDER*

DOMÍNGUEZ, District Judge.

Pending before the Court is defendants' *Motion to Dismiss* (Docket No. 16), of plaintiff's claims under Title I of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Plaintiff failed to timely reply to defendants' dismissal request. This matter was referred to the United States Magistrate Judge McGiverin ("Magistrate") for report and recommendation (Docket entries No. 38 and 39). By order of the Court, however, plaintiff submitted additional documentary evidence, such as the complaint filed with the Equal

Employment Opportunity Commission ("EEOC"), and the "right to sue" letter issued by the EEOC[1] (Docket No. 44). The *Report and Recommendation* was filed on February 27, 2007 (Docket No. 46). In the *Report and Recommendation,* the Magistrate recommended that defendants' motion to dismiss be granted. As of this date, no objections have been filed, thus, the Court deems this matter submitted. For the reasons set forth below, the *Report and Recommendation* issued by the Magistrate is adopted *in toto.*

### Standard of Review

The district court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Rule 72(b) of the Federal Rules of Civil Procedure ("Fed. R.Civ.P."); Local Civil Rule 72(a) of the Local Rules of the United States District Court for the District of Puerto Rico ("L.Civ.R."). *See Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See* Fed.R.Civ.P. 72(b) and L.Civ.R. 72(d). Moreover, 28 U.S.C. § 636(b)(1) (1993), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

(Emphasis ours).[2]

■ "Absent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir. 1985), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court, and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992). *See also Sands v. Ridefilm Corp.,* 212 F.3d 657, 663 (1st Cir.2000); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was

---

1. The "right to sue" letter was notified to plaintiff on October 4, 2005. The instant complaint was filed on December 28, 2005.

2. As stated in the *Order of Referral* (Docket No. 38), the parties were properly advised that any objections to the Magistrate's *Report and Recommendation* were to be filed within five (5) business days of notification. *See* L.Civ.R. 72(d); *see also* 28 U.S.C. § 636(b)(1). Furthermore, the Court set aside the three (3) day term provided by L.Civ.R. 5.1. *See* Docket No. 38; *see also, U.S. v. Diaz–Villafane,* 874 F.2d 43, 46 (1st Cir.1989)(*quoting Braxton v. Bi–State Dev. Agency,* 728 F.2d 1105, 1107 (8th Cir.1984) "[i]t is for the district court to determine what departures from it rules may be overlooked"). Notwithstanding, the five (5) day period and the ten (10) day period normally granted have elapsed and no objection has been made to the Report and Recommendation.

entitled to a *de novo* review, "however he was not entitled to a *de novo* review of an argument never raised"). *See also United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).

▮ In the instant case, an opposition to the Magistrate Judge's *Report and Recommendation* was not filed. Thus, the Court, in order to accept the unopposed *Report and Recommendation,* needs only satisfy itself by ascertaining that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1419 (5th Cir.1996)(*en banc* )(extending the deferential "plain error" standard of review to the unobjected legal conclusions of a magistrate judge); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982)(*en banc* )(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R.2001)("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding Fed.R.Civ.P 72(b)); *Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa. 1990)("when no objections are filed, the district court need only review the record for plain error").

As previously explained, since the Magistrate Judge's *Report and Recommendation* is unopposed, this Court has only to be certain that there is no "plain error" as to the Magistrate Judge's conclusions, in order to adopt the same. After a careful analysis, the Court finds no "plain error" and agrees with the Magistrate's conclusions. We would reach the same decision even if the *Report and Recommendation* had been timely objected.

### Analysis

In the instant case, Plaintiff did not object the *Magistrate Judges's Report and Recommendation* (Docket No. 46). After careful review and in absence of plain error, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference, the Magistrate's *Report and Recommendation* (Docket No. 19), to the instant Order. The Court agrees *in toto* with the Magistrate's conclusions: (a) the complaint is timely, as plaintiff filed the complaint within the 90 day period from the notice of the "right to sue" letter;[3] (b) the complaint fails to state a claim under ADA against the defendants in their individual capacities, as personal liability is not allowed under the ADA; (c) the complaint fails to state a claim as to the defendants in their official capacities, as the claims are barred by the sovereignty provision of the Eleventh Amendment;[4] (d) the complaint fails to request an injunctive relief to stop the alleged discrimination, only monetary damages were requested; (e) money damages under Title I of the ADA are not recoverable in an action brought by state employees against the State, as monetary recovery is barred by the Eleventh Amendment; and (f) this Court's ruling to decline to exercise its supplemental jurisdiction over plaintiff's state law claims, as plaintiff has not been able to show that there are grounds for a federal claim.

Although the Court finds no plain error in the Magistrate's *Report and Recom-*

---

3. The court notes, however, that plaintiff's EEOC claim is time barred, as it was filed after the 180 day period had elapsed. The record shows that the Charge of Discrimination was filed on March 10, 2005, and the change in work accommodation that trig-gered the alleged discrimination was formally notified to plaintiff in May 2004 (Docket No. 44).

4. The Constitution of the United States.

*mendation,* the Court expands the analysis on the ADA provisions. This *addendum,* however, will not alter the conclusions and recommendations made by the Magistrate, as to the dismissal of the instant action.

The ADA is an important piece of federal legislation directed to protect a private individual with a disability from any type of discrimination in the work environment. As stated by the Magistrate, the complaint is silent as to who is the employer, and on which capacity the defendants are being sued.

■ The ADA lacks a definition of "who is an employee beyond the circular provision that an 'employee' is 'an individual employed by an employer.' 42 U.S.C. § § 2000e(f), 12111(4). Indeed, the Supreme Court has noted that 'employee' does not have 'some intrinsically plain meaning.'" (Citation omitted). *De Jesus v. LTT Card Services, Inc., et al.,* 474 F.3d 16, 21 (1st Cir.2007). For example, "the mere fact that an individual is on the payroll is not necessarily dispositive of his or her status as an employee." *Id.*

A determination of who is the employer and who is the employee, for discrimination purposes, is crucial when determining personal liability, if any. In *Contreras Bordallo, et al. v. Banco Bilbao Vizcaya de Puerto Rico, et al.,* 952 F.Supp. 72, 73–74 (D.P.R.1997), *citing Colon Hernandez v. Wangen,* 938 F.Supp. 1052, 1064–1065 (D.P.R.1996), we discussed who is an employer, and quoted Judge Laffitte's analysis on who is an employer under the ADA and the Civil Rights Act:

> The overall language of Title VII, the Legislative history, and the Civil Rights Act of 1991 demonstrate that Congress used the word "agent" in the definition of "employer" to incorporate the doctrine of respondeat superior into the law [citations omitted]. There is absolutely no mention in the statute language or in the legislative history of Title VII's application to individual defendants (footnote omitted). As it was with other civil rights statutes such as Section 1981, Congress would have included individuals like supervisors as potential liable parties ... Finally the language of the Civil Rights Act reflects Congress' pellucid desire to protect small corporate entities from the burdens of litigating discrimination lawsuits (footnote omitted). It shields all defendants with lower than fifteen employees from liability, 42 U.S.C. § 1931a(a)(3) (1994). Moreover, for defendants with more than fourteen employees, it limits the amount for compensatory and punitive damages recoverable proportionally to the number of total employees. *Id.* Once again as with Title VII, there was absolutely no discussion of expanding liability to include individual defendants (footnote omitted). Indeed it would be nothing short of bizarre if Congress placed such heightened emphasis and concern on limiting the damages recoverable against small corporate entities and yet simultaneously, silently exposed all individual defendants to unlimited liability.

> Since the law is totally silent as to individual liability, and the word "agent" has been incorporated in the definition of "employer" to include the doctrine of respondeat superior [that is, to create liability for the employer upon conduct of certain supervisory employees] but not to establish individual liability, and further Congress has been meticulous in limiting the liability of small entities, this Court deems appropriate to leave to Congress, after consideration and debate, the matter of individual liability of supervisors.

■ In the instant case, the Magistrate held that assuming that the defendants are sued in their official capacities, then the employer is the Commonwealth of Puerto Rico, and plaintiff is impaired to

recover any monetary damages from the State in the federal courts, as the States are protected by the Eleventh Amendment. Suits filed by States' employees to recover money damages based on the State's failure to comply with the ADA provisions are "barred by the Eleventh Amendment." *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). As also stated by the Magistrate, if we assume that the defendants are sued in their personal capacities, the action under the ADA cannot proceed, as the defendants are not plaintiff's employer, thus, they are not personally liable to plaintiff under the ADA.[5]

In the instant case, plaintiff is a State employee, the complaint only seeks monetary damages for the alleged discrimination. The Court notes that plaintiff has not been discharged from his job. Thus, in the instant case, the Court is barred from awarding money damages, as plaintiff's claim is barred by the sovereignty of the State. *Garrett*, 531 U.S. at 360, 121 S.Ct. 955.

### *Conclusion*

For the reasons stated above, this Court finds that there is **no plain error** in the Magistrate Judge's excellent *Report and Recommendation* (Docket No. 46).[6] Ac-

---

**5.** Furthermore, most courts have held there is no federal cause of action against natural persons under Title VII, and other federal discrimination cases. As this district has previously explained:

Although the First Circuit has yet to decide whether a Title VII plaintiff may maintain a suit against an individual in his personal capacity, most circuits have held that no personal liability can be attached to agents or supervisors under Title VII. *See Serapion v. Martinez*, 119 F.3d 982 (1st Cir.1997) (declining to address the issue of individual liability); *but see Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 493 (7th Cir.1998) (citing *Williams v. Banning*, 72 F.3d 552 (7th Cir.1995), where no individual liability under Title VII was found); *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir.1998) (no individual liability under Title VII); *Wathen v. General Elec. Co.*, 115 F.3d 400, 405–06 (6th Cir.1997) (same); *Haynes v. Williams*, 88 F.3d 898 (10th Cir.1996) (same); *Dici v. Com. of Pa.*, 91 F.3d 542 (3rd Cir.1996) (same); *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2nd Cir.1995) (same); *Gary v. Long*, 313 U.S.App. D.C. 403, 59 F.3d 1391 (D.C.Cir.1995) (same); *Lenhardt v. Basic Institute of Technology, Inc.*, 55 F.3d 377 (8th Cir.1995) (same); *Smith v. Lomax*, 45 F.3d 402 (11th Cir.1995) (same); *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir.1994) (same); *Miller v. Maxwell's International, Inc.*, 991 F.2d 583 (9th Cir.1993) (same). Like the majority of the circuit courts, this District has generally held that individual defendants are not liable under Title VII. *See Canabal v.*

*Aramark Corp.*, 48 F.Supp.2d 94, 95–98 (D.Puerto Rico 1999) (Pieras, J.); *Acevedo Vargas v. Colon*, 2 F.Supp.2d at 206; *Pineda v. Almacenes Pitusa, Inc.*, 982 F.Supp. 88, 92–93 (D.Puerto Rico 1997); *Hernandez v. Wangen*, 938 F.Supp. 1052 (D.Puerto Rico 1996); *Anonymous v. Legal Services Corporation*, 932 F.Supp. 49, 50–51 (D.Puerto Rico 1996).

The Court is compelled by the reasoning of previous decisions within this District. Title VII's statutory structure suggests that Congress did not intend to impose individual liability over supervisors or agents of employer. *Padilla Cintron v. Rossello Gonzalez*, 247 F.Supp.2d 48 (D.P.R.2003). *See generally* the well developed and persuasive analysis of District Judge Laffitte in *Flamand v. American International Group, Inc.*, 876 F.Supp. 356, 361–64 (D.P.R.1994).

*See Sanchez Ramos v. Puerto Rico Police Department, et al.*, 392 F.Supp.2d 167, 179, n. 6 (D.P.R.2005).

Further, there is a potentially serious constitutional jurisdictional bar to authorize individual liability as to an employee-employee relationship under *United States v. Lopez*, 514 U.S. 549, 555, 558–559, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), in that Congress would have to justify that interstate commerce is being affected as to individual liability of employees.

**6.**

"The Court need not go further for it refuses to write at length to no other end than

cordingly, defendants' *Motion To Dismiss* (Docket No. 16) is hereby **GRANTED.** Plaintiff's claim under Title I of the ADA is hereby **DISMISSED** with prejudice, and the state law claims are hereby **DISMISSED without PREJUDICE.** Judgment will be entered accordingly.

IT IS SO ORDERED.

*MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION RE: RULE 12(b) MOTION TO DISMISS*

McGIVERIN, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Edwin López Mulero ("plaintiff" or "López Mulero") filed this case against fellow employees of the Courts of the Commonwealth of Puerto Rico. The defendants, as their positions are described in the complaint, are the Honorable Sonia Vélez Colón (Administrative Director of the Courts of Puerto Rico), José H. Cáez Alonso (Regional Marshal in charge of the San Juan Tribunal), José A. Sotomayor (a Supervising Marshal), and Víctor Avilés Cabrera (Supervisor of the Division of Court Services) (collectively "defendants"). The complaint seeks monetary damages under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Puerto Rico's Law No. 44 of July 2, 1985, as amended, 1 L.P.R.A. § 501, alleging that defendants violated a prior reasonable accommodation agreement with plaintiff, reassigned him to other duties in contravention of the agreement, retaliated against him for filing an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"), and otherwise discriminated

against him in his employment due to disability. Defendants have filed a motion to dismiss under Fed.R.Civ.P. 12(b)(1) and (6) ("Rule 12(b)(1)" and "Rule 12(b)(6)," respectively), claiming, *inter alia*, that plaintiff failed to exhaust administrative remedies, that the ADA cause of action cannot proceed against defendants in their personal capacities, that the Eleventh Amendment bars plaintiff's ADA claim against defendants in their official capacities, and that the state law claim should be dismissed for lacking an independent basis for federal jurisdiction. (Docket No. 16) Plaintiff failed to timely oppose the motion to dismiss (*see* Docket No. 20, 21), but, upon order of this court, filed copies of his EEOC complaint and "right to sue" letter. (Docket Doc. 40, 44).

Defendants' motion to dismiss was referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). For the reasons that follow, I recommend that defendants' motion to dismiss be granted.

## II. FACTUAL BACKGROUND

The facts as alleged in the complaint, and as contained in the EEOC documents plaintiff submitted at Docket No. 44, are assumed to be true for the purpose of deciding this motion. *See Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994).

In 1994, López Mulero began working as a deputy marshal for the General Justice Court of Puerto Rico. In 1999, he suffered renal failure and other health problems and was unable to return to

to hear its own words resonate as to the instances alleged as errors by plaintiff.
Where, as here, a [Magistrate] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear its own words resonate."

*See Lawton v. State Mut. Life Assu. Co. of Am.*, 101 F.3d 218, 220 (1st Cir.1996); and *In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F.2d 36, 38 (1st Cir.1993).

work until February 2001. Later that year he suffered additional health problems causing him to request and receive a reasonable accommodation, namely an assignment to work in a courtroom doing work related to civil cases, tasks he performed until March 15, 2004. On that date, López Mulero was called to a meeting attended by, among others, defendants Avilés Cabrera and Sotomayor, during which it was decided that López Mulero would be reassigned to work with the Monitor Safety Division after finishing his tasks in the courtroom. López Mulero initially agreed to this reassignment, believing it to be temporary. Soon, however, he suffered pain and intolerance to the cold causing him to ask Sotomayor to assign him other tasks. Sotomayor instead referred López Mulero to a letter dated May 10, 2004, purporting to amend plaintiff's reasonable accommodation agreement to include his new duties with the Monitor Safety Division. López Mulero immediately objected to any alteration to his reasonable accommodation, and met with defendant Cáez Alonso, the Regional Marshal, to try to resolve the situation. Cáez Alonso, however, rather than lend a sympathetic ear, bemoaned the fact that López Mulero's reasonable accommodation prevented him from working in criminal courtrooms; he informed that plaintiff's reasonable accommodation was being reevaluated by the Office of Court Administration. In the months that followed, López Mulero attempted fruitlessly to arrange meetings with his supervisors. In the meantime, Sotomayor sent plaintiff letters of admonishment for allegedly failing to sign an attendance card and for refusing to perform his duties as a deputy marshal. On November 5, 2004, Sotomayor evaluated plaintiff's work as "deficient and regular." On March 7, 2005, Sotomayor issued a further admonishment for events that allegedly occurred the month before.

On March 10, 2005, Lopez Mulero filed complaint number 162–2005–00211 with the EEOC, stating that he was employed by the Courts Administration, that he was provided reasonable accommodation on October 17, 2001, and that Sotomayor changed his reasonable accommodation in May 2004, constituting discrimination based on physical disability in violation of ADA. (Docket Doc. 44).

On May 19, 2005, López Mulero was forced to miss a medical appointment because he was not provided requested relief from his post. In June 2005, he was excluded from a plan to accumulate overtime hours. In September 2005, he agreed to his employer's request to submit to a medical evaluation, but it was never performed due to his employer's failure to contract a medical provider. On October 4, 2005, plaintiff received a "right to sue" letter from the EEOC.

## III. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

■ Defendants argue that the ADA claim should be dismissed under Rule 12(b)(1) for failure to exhaust administrative remedies. In particular, defendants challenge whether plaintiff filed an administrative complaint with the EEOC and received a "right to sue letter" prior to filing a lawsuit in federal court, since his failure to do so would warrant dismissal of the complaint. *See* 42 U.S.C. § 12117 (adopting for the ADA procedures applicable to cases brought under Title VII actions); 42 U.S.C. § 2000e–5(e)(1); *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir.1999). Although defendants concede that the complaint alleges that plaintiff both filed an EEOC charge and received the right to sue letter, defendants fault plaintiff for not attaching the respective documents to the complaint.

Rule 12(b)(1) provides that a defendant may move for dismissal for lack of subject matter jurisdiction. A Rule 12(b)(1) motion may be based on the plaintiff's failure to exhaust administrative remedies that are a prerequisite to the suit. *U.S. v. Lahey Clinic Hospital, Inc.*, 399 F.3d 1, 8 fn. 6 (1st Cir.2005). Moreover, Rule 12(b)(1) may be used to attack two different types of defects: first, it may attack the facial sufficiency of the jurisdictional allegations of the complaint; second, it may challenge the factual basis for the court's subject matter jurisdiction even despite the formal sufficiency of the jurisdictional allegations of the complaint. *See* 5B Wright & Miller, *Federal Practice & Procedure*, Civil 3d § 1350 (2006). In ruling on a Rule 12(b)(1) motion, the court must construe the complaint liberally and indulge in all reasonable inferences in favor of the plaintiff. *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir.1996). The court, however, is not limited to the face of the pleadings and may consider any evidence of record it deems necessary to settle a jurisdictional question. *Id.* The burden ultimately is on plaintiff to prove the existence of subject matter jurisdiction. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995).

Here, the record is sufficient to defeat both "facial" and "factual" claims of defects in subject matter jurisdiction. Initially, and as defendants appear to concede, the complaint adequately alleges that plaintiff filed a charge of discrimination with the EEOC on March 10, 2005, and received a right to sue letter on October 4 of the same year. *See* Complaint, ¶¶ 44, 51. Plaintiff, moreover, in response to this court's order, has filed both documents, which provide support for the jurisdictional allegations. (*See* Docket No. 44). Defendants' request for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction therefore should be denied.

## B. Plaintiff Fails to State a Claim Under ADA Against Defendants in their Individual Capacities.

Defendants next argue that ADA does not permit a claim against defendants in their individual capacities. Although the First Circuit apparently has not ruled on this issue, the overwhelming weight of authority holds that under ADA only employers—and not a plaintiff's supervisors—may be liable.

The complaint alleges discrimination in employment based on disability, a cause of action falling under Title I of ADA. *Tennessee v. Lane*, 541 U.S. 509, 516–17, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III"). Title I provides that no "covered entity" shall discriminate in employment based on a person's disability. 42 U.S.C. § 12112(a). The term "covered entity" is defined, in pertinent part, to include "an employer." 42 U.S.C. § 12111(2). "Employer" is itself defined in general as a "person" that employs a requisite number of employees, or "any agent of that person," but not to include the United States. 42 U.S.C. § 12111(5). For the definition of "person," ADA references 42 U.S.C. § 2000e, which provides, in turn, that "person" "includes one or more individuals, governments, governmental agencies, political subdivisions," among others. 42 U.S.C. § 12111(7); 42 U.S.C. § 2000e(a).

Connecting these definitional threads, an "individual" or "person" does not appear to be excluded *per se* from liability under ADA, since "individuals" and "persons" can conceivably fit within the definition of "employer." That does not help plaintiff

in the present case, however, because the definition section of ADA requires that to be an "employer," an "individual" or "person" must actually employ a requisite number of employees. *See* 42 U.S.C. § 12111(5).[1] Importantly, in the present case the complaint does not allege that the named defendants employ the plaintiff—or anyone else for that matter. Rather, the complaint states that the plaintiff is employed by the General Justice Court of the Commonwealth of Puerto Rico. *See* Complaint, ¶ 12. Defendants are similarly described not as employers but as employees themselves, holding various positions in the Commonwealth court system. *See* Complaint, ¶¶ 7–10. Since there are no allegations that the defendants employ anyone, then they cannot—as either "individuals" or "persons"—fit the definition of "employer" or "covered entity" under the plain language of the statute.

Notwithstanding the above, the argument has been made that ADA holds liable not only persons found to be employers but also "any agent of that person," 42 U.S.C. § 12111(5), and plaintiffs in several cases have argued that this "plain language" supports liability against individual or supervisor defendants. This argument, however, has been rejected by every circuit court to address it. *See Butler v. City of Prairie Village*, 172 F.3d 736 (10th Cir. 1999); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996); *E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279–82 (7th Cir.1985). Each of these decisions concluded that Congress, by including the phrase "or any agent of that person," did not intend to subject co-employee defendants to individual liability, but rather sought to impose *respondeat superior* liability on employers for the acts of their

agents. *See e.g., AIC Security Investigations,* 55 F.3d at 1281.

This District has followed the lead of the circuit courts and has similarly held that ADA provides for no individual liability against supervisors or co-employee defendants. *See Julia v. Janssen, Inc.,* 92 F.Supp.2d 25, 28–29 (D.P.R.2000); *Barbosa v. Baxter Healthcare Corp.,* 2000 WL 1739309 (D.P.R.2000); *Vicenty Martell v. Estado Libre Asociado,* 48 F.Supp.2d 81, 87–88 (D.P.R.1999); *Sifre v. Dep't of Health,* 38 F.Supp.2d 91, 105–06 (D.P.R. 1999); *Anonymous v. Legal Serv. Corp.,* 932 F.Supp. 49, 50–51 (D.P.R.1996). Plaintiff has cited no reason, and the court is not aware of any, to depart from the clear and consistent holdings of the judges in this District, and from the weight of circuit court authority. I therefore recommend that the court grant defendants' motion to dismiss the ADA claim against all defendants in their individual capacities.

## C. Plaintiff's ADA Title I Damages Claims Against Defendants in Their Official Capacities Are Barred by Eleventh Amendment Immunity.

### 1. *Personal versus official capacity.*

Defendants next argue that the Eleventh Amendment of the U.S. Constitution shields them in their official capacities from claims for damages under ADA Title I. Before delving into this issue, it is worth examining whether the complaint named any defendant in his/her official capacity, since neither the complaint nor the summonses state the capacity in which the defendants are being sued. (*See* Docket No. 1, 5, 6). If all of the defendants were sued only in their personal capacities, then

---

1. Such would be the case of an unincorporated individual who employed the required number of employees.

plaintiff's ADA cause of action should be dismissed in its entirety for the reasons discussed in Section III.B above, since plaintiff did not name his employer as a defendant. On the other hand, if at least one defendant was sued in his/her official capacity, then plaintiff in effect has sued his employer since suits against government officials in their official capacity are in effect suits against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

In the context of a case brought under 42 U.S.C. § 1983, the First Circuit adopted the "course of proceedings test" to resolve whether a government official is sued in his personal or official capacity when the complaint, as here, fails to so specify. *Powell v. Alexander*, 391 F.3d 1, 21–24 (1st Cir.2004). Under the "course of proceedings" test,

> [C]ourts are not limited by the presence or absence of language identifying capacity to suit on the fact of the complaint alone. Rather, courts may examine "the substance of the pleadings and the course of proceedings in order to determine whether the suit is for individual or official liability". Factors relevant to this analysis include the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity. A court may also take into consideration whether the parties are still in the early stages of litigation, including whether amendment of the complaint may be appropriate. No single factor is dispositive in an assessment of the course of proceedings.

*Id.,* at 22.

Applying the "course of proceedings" test to the present case, the complaint appears to sue at least one defendant, the Honorable Sonia Vélez Colón, in her official capacity as the Administrative Director of the Courts of Puerto Rico. This conclusion is supported by the fact that the complaint makes no allegation of discriminatory acts performed by Vélez Colón, nor does it allege she participated in the employment actions taken against the plaintiff. Rather, the complaint alleges only that she was the Administrative Director of the Courts, *see* Complaint, ¶ 7, thus casting her as a stand-in for her employer. Defendants' motion to dismiss, moreover, does not dispute that Vélez Colón (and the other defendants) were sued in their official capacities, and in fact makes the Eleventh Amendment argument on behalf of the Courts Administration as if it were also named as a defendant. (*See* Docket No. 16, p. 12–15). Given these circumstances, and reading the complaint liberally in favor of the plaintiff, I conclude that Vélez Colón was sued in her official capacity and that the suit against her should be treated as against the Commonwealth Courts Administration. *See Graham*, 473 U.S. at 166 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

Application of the "course of proceedings" test does not reach the same result as to the other defendants, however. In the cases of defendants Cáez Alonso, Sotomayor and Avilés Cabrera, the complaint includes specific allegations that they engaged in acts that plaintiff characterizes as discriminatory or retaliatory in violation of ADA. *See* Complaint, ¶ 12–53. Moreover, the complaint only requests monetary damages and does not contain a prayer for any injunctive relief so as to require these defendants to perform an

official act to alleviate the alleged discrimination. I therefore conclude that the complaint states no claim against these defendants in their official capacities.

### 2. Eleventh Amendment immunity from damages claims.

In *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), the Supreme Court unequivocally held that the Eleventh Amendment bars money damages actions under ADA Title I brought by state employees against the State.[2] Even though the Commonwealth of Puerto Rico is not a state, it enjoys the protection of the Eleventh Amendment. *See Jusino Mercado v. Puerto Rico*, 214 F.3d 34, 37 (1st Cir.2000).

The Eleventh Amendment bar also extends to governmental instrumentalities which are an arm or "alter ego" of the State. *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. and the Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 61 (1st Cir.2003). In addition, the Eleventh Amendment protects state officials in their official capacity, since a claim against a state official for monetary relief is, in essence, a claim against the State. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In *Fresenius*, the First Circuit described the factors to be considered to determine whether a government institution is an arm of the state entitled to Eleventh Amendment immunity. These factors include how the entity is characterized under state law, the level of control exercised by the state, the entity's relationship to the public treasury, and whether the entity performs a state function. *Fresenius*, 322 F.3d at 62 fn. 5–6; *see also Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994).

Here, the balance of these factors supports a finding that the Commonwealth's Courts Administration is an arm of the state entitled to Eleventh Amendment immunity, at least on the record in this case.[3] There can be little doubt that the Puerto Rico court system performs the state function of administering justice on the island, and that it has been so characterized under state law. *See, e.g.*, 4 L.P.R.A. § 22c ("The Judicial Power of Puerto Rico shall constitute a unified judicial system with respect to jurisdiction, operation and administration"). Moreover, Puerto Rico's courts system receives its funding from the island's treasury as directed by Puerto Rico's legislature in Law No. 286 of December 20, 2002,[4] and any judgment in the case would be paid from government funds. Given these circumstances, the Courts Administration consti-

---

**2.** In *Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), the Supreme Court held that Eleventh Amendment immunity did not extend to a state sued for failure to provide public services in violation of Title II of ADA. The present case, however, was brought under Title I and not under Title II; therefore, *Garrett*, and not *Lane*, provides the rule of decision.

**3.** As noted above, plaintiff failed to timely oppose the motion to dismiss, and defendants' Eleventh Amendment argument therefore stands unrebutted. *See Tavarez v. Champion Prods., Inc.*, 903 F.Supp. 268, 270 (D.P.R. 1995) ("Although [failure to properly oppose dispositive motion] does not signify automatic defeat, it launches the nonmovant's case down the road toward an easy dismissal").

**4.** *See* 23 L.P.R.A. § 104(a)(7) (assigning to the judicial branch 3.3% of the average income obtained and collected by the General Fund of the Treasury of Puerto Rico in two years before the current year).

tutes an arm of the state entitled to Eleventh Amendment immunity. I therefore recommend that the complaint be dismissed with prejudice against defendants in their official capacities.

### D. Lack of Independent Basis for Federal Jurisdiction for State Law Claim

 The ADA claim disposed of, defendants also seek dismissal of the supplemental Puerto Rico law claim as lacking an independent jurisdictional basis. "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." *Rodríguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995). In cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case basis. *Id.; see also Rodríguez–Cirilo v. García*, 908 F.Supp. 85, 92 (D.P.R.1995) ("The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. If federal law claims are dismissed before trial, however, the state law claims should also be dismissed") (citation omitted). In light of plaintiffs' lack of a foundational federal claim, this court should decline to exercise its supplemental jurisdiction over plaintiffs' state law claim.[5]

### IV. CONCLUSION

For the foregoing reasons, I recommend that defendants' motion to dismiss the complaint (Docket No. 16) be **GRANTED,** and that the court issue judgment dismissing plaintiff's ADA cause of action with prejudice, and dismissing plaintiff's remaining state law cause of action without prejudice.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within five (5) days of its receipt. (*See* Docket No. 38.) Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir.1987); *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir. 1986).

Feb. 27, 2007

**IT IS SO RECOMMENDED.**

---

5. Because plaintiffs' causes of action were disposed of on the aforementioned grounds, there is no need to address defendants' other arguments.